BEL-AMI DE MONTREUX (# 6207)
ATTORNEY AT LAW
MONTREUX FRERES, P.C.
10619 SOUTH JORDAN GATEWAY, SUITE 345
SOUTH JORDAN, UTAH 84095
TELEPHONE: (801) 381-0571
TELEPHONE: (801) 359-6844

EMAIL: montreuxfreres@aol.com

*Attorney for Defendant*

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF,<br><br>VS.<br><br>DANA JEAN STEELE,<br><br>DEFENDANT. | DEFENDANT'S SENTENCING MEMORANDUM<br><br>CASE NO: 1:21-cr-00073 RJS-DBP<br><br>JUDGE ROBERT J. SHELBY |

The Defendant in this matter, DANA JEAN STEELE ("Dana"), by and through her attorney of record, Bel-Ami J. de Montreux, respectfully submits this memorandum in support of a variance from the United States Sentencing Guidelines ("Guidelines") pursuant to 18 U.S.C. § 3553.

Dana has successfully completed three years of supervised release. She has positively restructured her lifestyle by focusing on her sobriety and supporting others with addiction problems. Dana also suffers from severe physical ailments that cause

debilitating pain in her hands and feet. Her doctor is closely monitoring her medical condition, which requires routine follow-up appointments and injectable *Amjevita* (to treat her Rheumatoid Arthritis) every two weeks.[1]

## **THE FACTORS TO BE CONSIDERED IN IMPOSING SENTENCE**

In *United States v. Booker,* 125 S. Ct. 738 (2005), the Supreme Court declared the Sentencing Guidelines to be only an advisory mechanism. In sentencing an individual, the sentencing court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). Therefore, a sentence must be "sufficient, but not greater than necessary," to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

Next, the court must "determine whether a sentence within the [advisory] range …serves the factors outlined in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland,* 437 F.3d 424 (4th Cir. 2006) (quoting *United States v. Green,* 436 F.3d 449, 455 (4th Cir. 2006)).

The inquiry under Section 3553(a) is broad-ranging. As the Fourth Circuit has observed, there is "essentially no limit on the

---

[1].
 Dana's Rheumatology Office Clinic Notes — medical and medication record. **Exhibit A.** Filed Sealed.

number of potential factors that may warrant … a variance."  *United States v. Davenport,* 445 F.3d 366, 371 (4th Cir. 2006). "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable."

## A VARIANCE IS JUSTIFIED UNDER 18 U.S.C. § 3553

In this case, a variance is justified under *Booker, Gall,* and 18 § 3553 U.S.C. Ultimately, the Court must "consider all of the § 3553(a) factors" to decide if "they support the sentence requested by a party."

The court should impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining a particular sentence to be imposed, shall consider:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence from criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available; and

    (4) the kind of sentence and sentencing range established by the guidelines. See 18 U.S.C.
§ 3553(a) (1)-(4) (quotations omitted).

A. *The Nature and Circumstances of the Offense.*

Dana has accepted responsibility for her role in distributing methamphetamine with Vanderwoude (co-defendant). While Dana is legally responsible for her actions, the facts show she was manipulated by Vanderwoude, who had played a "puppet master" role throughout their sporadic seventeen-year relationship. Dana was indeed vulnerable, having experienced a lifetime of setbacks and trauma, including physical and psychological abuse. She was addicted to substances that altered her judgment and caused her to believe she could not survive without them. She made an excruciatingly stupid mistake when she participated in the distribution to maintain what she felt was her lifeline.

At the time of her arrest, Dana felt a sense of relief. She knew in her heart that this would be an opportunity to separate herself from her addiction and, most importantly, the hold Vanderwoude had over her.[2]

These facts differentiate Dana from the prototypical drug dealer, and they should be given weight in the § 3553 analysis. On the spectrum of culpability of drug offenders, Dana is on the lesser end; her punishment, therefore, should be applied with like proportion.

---

[2] Information obtained from mitigation expert Marissa Sandall.

4

B. *Dana's Background and Current Medical Condition Justify a Variance.*[3]

Like many people who struggle with drug addiction, it should come as no surprise that Dana grew up in a home fraught with alcoholism, neglect, and anger. Her father worked several jobs to allow her mother to stay home with Dana and her younger brother. When her father was not working, he was drinking. He drank heavily to cope with the demands of providing for his family. His alcoholism became too much for his wife to tolerate. The couple argued about his drinking and lack of parenting daily.

Dana's mother was also emotionally separated from her children. She did not support or encourage Dana to attend school and get an education. Keeping tabs on her children and knowing their whereabouts and activities became less important to her as Dana got older. Dana said going to school felt more like an option than a responsibility. Dana went to school to socialize and be with her friends. She did anything possible to avoid being at home when her mother was angry with her father.

Dana remembers one occasion witnessing her mother chase her father through the house with a kitchen knife. Dana and her brother were often caught in the middle of these vicious arguments, and both were expected to choose a side in their parents' rivalry.

As a young teenager, Dana chose her father's side because her

---

[3] Information obtained from mitigation expert Marissa Sandall.

relationship with her mother had deteriorated due to her harsh discipline and neglect. Dana's father was probably not the better choice because of his alcoholism. Dana was only twelve years old the first time her father gave her alcohol. She quickly realized that being intoxicated took away her worries, at least for the time being. She started stealing liquor from her parents regularly.

During high school, Dana skipped school and drove around with friends or hung out in the parking lot to drink alcohol and smoke marijuana. She spent the weekends at "kegger parties," where she drank beer, smoked marijuana, and experimented with LSD and psilocybin mushrooms.

Dana's daily drug abuse continued until she discovered she was pregnant when she was twenty-two. The pregnancy became her priority — she immediately quit drinking and taking drugs. She was sober for the first time in nearly ten years.

Life improved for Dana. She got married, settled down, and began adjusting to her responsibilities as a wife and a mother. She and her husband lived with her parents. They helped care for her newborn daughter. A few months later, Dana worked at a bar to contribute to her young family's finances. This was a detrimental mistake.

Within weeks, Dana was drinking again. She drank while she worked and continued drinking after her shift ended, partying with co-workers and patrons. She was introduced to cocaine. It became

her drug of choice. Her lifestyle consisted of working, drinking, and getting high. There was little time to focus on her daughter or her marriage. She divorced her husband. Her parents were also getting divorced, and Dana needed a place to live. She wanted a place of her own to raise her daughter. Dana and her baby moved into assisted housing a few months later.

Unfortunately, Dana struggled to manage life on her own. She had gained a significant amount of weight during her pregnancy. She felt fat, unattractive, and depressed. In a desperate attempt to lose the "baby weight," she quit using cocaine and switched to meth. Dana lost 100 pounds in less than six months. "I thought I had found the easiest weight loss program ever, but what I really found was a new addiction," she explained.

From that time forward, using meth trumped everything in Dana's life. She quit her job. She relied on her parents to raise her daughter. Her drug use began to dovetail with distribution. Dana got pregnant by an abusive boyfriend, but this time, she did not quit using meth.

When her son was born with Down's Syndrome, Dana felt a horrendous amount of guilt. Her depression and addiction worsened, and she knew in her heart that she was not capable of raising her son. Shortly after his birth, Dana and the child's father were arrested and sent to prison. Dana's mother was also unable to care for the baby because she was hospitalized with terminal cancer.

7

Ultimately, Dana made a selfless decision and relinquished her parental rights, allowing him to be adopted.

Dana was emotionally and physically destroyed. She spent the next decade using and selling meth, in and out of prison, and barely surviving abusive and dangerous relationships. Her arrest on these charges in 2021 was her saving grace.

## A. Variance Sentence Will Adequately Reflect The Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Protect the Public, and Deter Future Conduct.

The present case obviously represents serious criminal acts. Dana's illegal distribution has critically damaged her life and the lives of her children and grandchildren. It is worth considering that Dana cooperated with law enforcement before and after her arrest. As the PSR indicates, she accepted responsibility for her criminal actions on December 18, 2023, under a written plea agreement with the government. Dana pled guilty to one count of Possession of Methamphetamine with Intent to Distribute, a violation of 21 U.S.C. § 841(b)(1)(C).

Dana's family members, co-workers, and fellow members of *Alcoholics Anonymous* have stressed that Dana has their full support in rectifying this situation and moving forward with a life of sobriety.[4]

An individual's post-offense conduct can significantly

---

[4] Support letters from Dana's daughter, neighbor, associates, and employer. **Exhibit B.**

justify a substantial variance from the applicable guideline range. Evidence of positive post-offense conduct strongly supports the conclusion that imprisonment is unnecessary to deter a defendant "from engaging in future criminal conduct or to protect the public from his future criminal act." *Pepper* states that post-sentencing rehabilitation may be highly relevant to several sentencing factors, such as the "history and characteristics of the defendant" and the "need for the sentence imposed … to afford adequate deterrence to criminal conduct [and] protect the public from further crimes of the defendant". Dana's post-offense conduct demonstrates that she is not a danger to society and is not likely to reoffend. As such, a lengthy prison sentence is unnecessary.

After her arrest on these charges, Dana was placed on pretrial release in June 2021. She, like many probationers, had a minor setback the following month. The PSR states, in part:

> On August 16, 2021, the defendant had contact with the Salt Lake City Police Officers. The defendant admitted to being at her friend's home and consuming alcohol after curfew. The defendant was admonished and asked to inform her treatment provider of the incident. The defendant stated she would begin attending *Alcoholics and Narcotics Anonymous.*

PSR ¶ 8. Dana immediately joined an AA group at a church near her home. She attended meetings daily for over a year; on her most difficult days, she attended two or three meetings. As she became more confident in herself, her sobriety became easier. Since October 29, 2021, pretrial services records indicate the defendant

has complied with all court-ordered release conditions. PSR ¶ 10.

Unlike many who have been granted the privilege of release, Dana has taken full advantage of her freedom, remaining employed and living a law-abiding life for the past three years. It is important to note that Dana has remained sober for nearly thirty-five months. During which, she endured the death of her beloved father and the sudden death of her brother. Despite the agonizing pain she experienced, Dana remained sober, leaving her the only member of her family to survive addiction.[5]

Through her experience with *Alcoholics and Narcotics Anonymous,* Dana has enjoyed the opportunity to support and serve others who also struggle with addiction. She attends meetings regularly and more frequently when her health allows it.

<u>**ARGUMENT**</u>

**DANA'S CONDUCT DURING THE PAST THREE YEARS ON PRETRIAL RELEASE AND HER MEDICAL CONDITIONS MERIT A SENTENCE OF SUPERVISED RELEASE.**

In August 2013, Attorney General Eric Holder lamented that "too many Americans go to too many prisons for far too long and for no truly good law enforcement reasons," and cautioned that "we cannot simply prosecute or incarcerate our way to becoming a safer country."[6] In a similar vein, the Sentencing Reform Act itself

---

[5] Information obtained from mitigation expert Marissa Sandall.
[6] http://www.theguardian.com/world/2013/aug/12/eric-holder-smart-crime-reform-us-prisons

suggests that the goals of sentencing are not always best served by incarceration. Instead, Congress felt "it may very often be … that probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards,* 595 F.3d 1004, 1016 (9th Cir. 2010) (internal citation omitted).Here, there is no good law enforcement reason to place Dana in federal prison. Her laudable behavior while on pretrial release demonstrates that deterrence can, and did, begin during the pretrial stage and can continue through supervised release.

The third factor in Section 3553(a)—the kinds of sentences available—encourages the Court to consider the various sentencing options available. With a variance, the Court may craft a reasonable sentence, including supervised release, community service, or home or community confinement, as the Court deems appropriate based on the circumstances and mitigating factors described herein.

A related provision contained in 18 U.S.C. § 3582 requires courts to "recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation."[7] Further, under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of a [defendant] which a court … may receive and consider for the purpose of

---

[7] (emphasis added).

imposing an appropriate sentence."[8]

As this Court crafts a reasonable sentence, Dana asks that the punishment be tailored to "fit the offender and not merely the crime." *Pepper v. United States,* 562 U.S. 476, 487 (2011). A sentence outside prison walls would be "just punishment," act as "deterrence," "reflect the seriousness of the offense," and "promote respect for the law." 18 U.S.C. § 3553(a).

The severity of being placed on supervision, like probation, is very real. It is punishment. In *Gall,* the Supreme Court recognized that:

> "… custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that subsequentially restrict their liberty."

*Gall v. United States,* 552 U.S. 38, 48 (2007).

**A.  Dana's Post Indictment Rehabilitation And Self-Improvement Are Nothing Short Of Extraordinary.**

Since her arrest, despite all the challenges and defeats, despite her poor health and fears, Dana has been engaged in an impressive and, most importantly resolute and fruitful, effort at rehabilitation. She has maintained sobriety and abided by all of her conditions of release for the past three years. She has shown her true character, became a contributing member of society, and

---

[8] (emphasis added).

demonstrated clearly that she does not present a future risk to society. She will continue supporting herself through gainful employment and, most importantly, will continue participating in *Alcoholics and Narcotics Anonymous* and providing emotional and practical support to others. Dana's willingness to share the haunting experiences she has suffered due to her addiction will, indeed, continue to deter herself and others from engaging in criminal activity.

Dana's story is one of enormous struggles, defeats, survival and redemption! She respectfully suggests that the statutory sentencing factors applied in her case supports a non-custodial sentence. Specifically, Dana's unique history and characteristics, and medical conditions,[9] and conduct while on pretrial release favor a sentence of supervision. While on pretrial release, Dana has recognized her grave mistakes and their rippling effects on her life. She has created a stable foundation for herself and her loved ones to the best of her ability. A sentence of incarceration

---

[9]. The medical records, Exhibit A, show that Dana suffers from many serious health problems. We submitted, under seal, a copy of her medical record and medication list. The Court, in its discretion can vary on this basis. *See United States v. Almenas,* 553 F.3d 27 (1st Cir. 2009) (affirming downward variance of 43 months below the bottom of the guideline range based on defendant's combination of physical and mental disabilities). *See also United States v. Meyers*, 503 F.3d 676 (8th Cir. 2007) ("district court did not abuse its discretion in finding that a shorter period of incarceration, with mental health treatment and supervised release, is the most effective sentence").

would needlessly create cracks in this foundation, breaking apart her support system and imperiling her success. Instead, Dana requests a sentence that builds upon her efforts and strengths, the very foundation she has worked so hard to build during the past three years.

As it is now generally accepted, the sentencing judge should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996).

Federal Judges are no longer bound by a rigid application of the guidelines. They can exercise discretion and consider the characteristics of the defendant. *See generally*, *United States v. Andrews*, 447 F.3d 806 (10th Cir. 2006) ("while the guidelines discourage consideration of certain factors for downward departures, *Booker* frees courts to consider those factors as part of their analysis under § 3553(a)")

In *United States v. Whitaker*, 152 F.3d 1238 (10th Cir. 1998), the 10th Circuit remanded due to error in a case where "the district court found that it lacked the authority to consider this factor [post-offense rehabilitation] as a basis for downward departure, based on our holding in *United States v. Ziegler*, 39 F.3d 1058, 1061 (10th Cir. 1994).... However, after this court

14

decided *Ziegler*, the Supreme Court held in *Koon v. United States* that any potential basis for a downward departure not specifically prohibited by the Sentencing Commission may be considered by a district court."

Here, again, we must respectfully underline Dana's efforts at rehabilitation and positive changes since her pretrial release. Several cases support a court's power to grant a downward departure for post offense rehabilitation. *See United States v. Rodriguez*, 724 F. Supp. 1118, 1119 (S.D. N.Y. 1989) where the Court reasoned that it "would consider it senseless, destructive and contrary to the objectives of the criminal law to now impose a year's jail term on this defendant. In my view, the reasons for such a term are feeble and are clearly outweighed by the reasons favoring a non-jail sentence. The rehabilitation of a drug addict by his act of will is no mean accomplishment. Because of it, his children and wife have recovered their father, husband and provider, and society has regained a productive citizen. It appears society has nothing to fear from him, as it seems most unlikely he will now throw away his rehabilitation and return to drugs. The imposition of a year's jail sentence would serve no end, but ritualistic punishment with a high potential for destruction. Indeed, putting the defendant in jail for a year would be the cause most likely to undo his rehabilitation." *See also United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009)(district court's finding that man convicted of one

count of child porn possession would not be adequately accommodated in prison and would be better served by outpatient psychiatric treatment supported reasonableness of imposing five years probation rather than a guideline term of 41-51 months); *Also see United States v. Jones,* 158 F.3d 492 (10th Cir. 1998)(the district court did not abuse its discretion in departing downward based on defendant's post-offense rehabilitation evidenced by his regular work counseling in support of his children).

## CONCLUSION

To conclude, it would be incomplete not to verbatim quote the following colloquy between Magistrate Judge Dustin Pead and Dana at her change of plea hearing: on December 18, 2023.[10]

> THE COURT: But more impressively, Ms. Steele, I've read a little bit about some of the challenges that you've had in your life, the death of your father, some health challenges, and you maintained sobriety through it all.

> DEFENDANT STEELE: I did. My brother passed away as well.

> THE COURT: I'm sorry. And, you know, to be under a federal indictment and for things to happen with prio concerns relating to drug use, this is something to be proud of. I know it'; not easy to come to federal court and plead guilty to a felony. But I don't think dark moments are monuments in our lives. They don't have to be. So credit to you for what you have done in the interim.

---

[10].    Transcript of Change of Plea Hearing.  **Attachment C.**

16

And my guess is your success has given rise to an agreement that pulled the minimum mandatory off the table. So I'm more interested in resiliency than perfection. It's just my opinion. And I'm impressed by what you have done on your time in pretrial release.

DEFENDANT STEELE: Of course.

THE COURT: There's practical consequences if you fail, custody, the whole nine yards. But most importantly, you will have compromised yourself, all the hard work you've already put in.

DEFENDANT STEELE:  Exactly. My life has changed, like 100 percent, so . . .

THE COURT:  It's strange how an indictment in federal court can be this paradoxical blessing sometimes – –

DEFENDANT: Exactly.

THE COURT: – – in people's lives. But we all need reset buttons in our life. And we're not immune from them, either. SO credit to you for taking advantage of the resent button and doing so good.

DEFENDANT STEELE: Thank you very much.

Change of Plea Transcript, at pp 20-21.

Dana respectfully asks this Court for a chance to prove herself. She asks this Court to vary from the guidelines and impose a non-custodial sentence with supervised release. Dana presents here today with humility and pride because she is sober and thriving for the first time in her life. Given her significant

history of drug and alcohol abuse, she takes great pride in this accomplishment. Dana refuses to let her history become her destiny.

RESPECTFULLY SUBMITTED this 4th Day of August, 2024.


/s/Bel-Ami de Montreux
Bel-Ami de Montreux
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2024, I filed a true and correct copy of the foregoing via CM/ECF, giving notice to the following:

Nathan D. Lyon, Esq.
United States Attorney's Office
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111


/s/Bel-Ami de Montreux
Bel-Ami de Montreux
*Attorney for Defendant*