TRINA A. HIGGINS, United States Attorney (#7349)
NATHAN D. LYON, Special Assistant United States Attorney (#10171)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DANA JEAN STEELE, <br><br> Defendant. | GOVERNMENT'S SENTENCING MEMORANDUM <br><br><br> CASE NO: 1:21-CR-00073 <br><br><br> Judge Robert J. Shelby |

The United States of America, by and through the undersigned Special Assistant United States Attorney, submits this memorandum in its request for a sentence between 48-60 months.

## BACKGROUND

On June 6, 2021, Defendant and her co-defendant, Justin Vanderwoude, were indicted under 21 U.S.C. 841(a)(1), alleging Defendants possessed with intent to distribute more than 50 grams of actual methamphetamine, thus triggering a 10-year mandatory minimum sentence. On January 18, 2022, Defendant Vanderwoude pleaded guilty to a superseding information of Possession of Methamphetamine with Intent to Distribute, striking the mandatory minimum language, and agreeing to sentence of 75 months pursuant to rule 11(c)(1)(C). On June 2, 2022, this Court accepted the plea

agreement and sentenced Defendant Vanderwoude to 75 months imprisonment. Defendant is still incarcerated at FCI Stafford.[1]

On May 15, 2023, this matter was set for a four-day trial, scheduled to begin on January 23, 2024. In November 2023, the Government began actively preparing for trial, preparing exhibits, consulting witnesses, and preparing expert notices. On December 12, 2023, the parties reach a resolution in which Defendant Steele would plead guilty to a superseding felony information that did not allege a mandatory minimum sentence. This superseding information was identical to Defendant Vanderwoude's superseding information.

Defendant Steele's guideline range is 97-121 months. Defendant submitted a sentencing memorandum requesting no incarceration. Given the facts of this case and §3353 factors, such a request is simply unrealistic.

## ARGUMENT

18 U.S.C. 3353(a) directs this Court to weigh a variety of factors so that its ultimate sentence is fair, just, and balanced—being neither too long nor too short. Each of these factors will be discussed in turn.

### A. Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Trafficking methamphetamine is unquestionably very serious conduct. The scourge of addiction has wrecked lives, torn apart families, and created a national crisis that our communities are woefully ill-equipped to handle. The number of court cases linked to narcotics is legion, and our courts have shouldered much of this burden in trying to pick up the pieces and put band aids on gaping wounds. Given that reality, it is axiomatic that drug users are in a completely different category than drug dealers. Indeed, it is one thing to be a slave to your addiction; it is quite another to be a dealer, and thus the means by which people remain perpetually chained to their addiction. Consequently, drug dealers must be treated differently than drug addicts.

---

[1] Bureau of Prisons website.

This Court previously imposed a sentence of 75 months for co-Defendant Vanderwoude. That stiff sentence treated Defendant Vanderwoude as a drug dealer. And it should. Serious conduct merits serious punishment. Here, Defendant Steele was trafficking significant quantities of meth. In her interview with police, she admitted that she—not Defendant Vanderwoude—was the one with the connection to the meth supply chain, receiving 1-2 pounds of meth a week for the past year. Defendant Steele further specified that she had been receiving meth from one particular source for the past several weeks. These admissions are important in light of her current position that her drug trafficking was done under the duress of Defendant Vanderwoude.

Defendant Steele asserts, without evidence, that Defendant Vanderwoude was the "puppet master" in their relationship.[2] Not only is there no evidence to support this assertion, but it is belied by the facts. Defendant Vanderwoude was in the Weber County Jail no later than September 8, 2020, and remained in custody until his release two or three days before this incident.[3] Consequently, there were approximately five months where Defendant Vanderwoude was incarcerated, yet Defendant Steele continued to traffic significant quantities of meth by her own choice and volition. Her continued drug distribution in spite of his absence while incarcerated demonstrates that Defendant Steele's conduct was not just done at his behest. Rather, she was neck-deep in the drug trafficking world at the time of her arrest, and had been so for quite some time. Accordingly, Defendant's sentence should take into account her protracted criminal conduct.

A "just punishment" also necessarily entails parity with similarly situated defendants. Indeed, the very purpose of the sentencing guidelines is to have uniformity and equity among co-defendants and similarly situated individuals. Defendant's proposed sentence of straight probation turns a blind-eye to any sense of parity among similarly situated defendant, much less her co-defendant.

Defendants Steele and Vanderwoude engaged in the same conduct, pleaded to identical charges, and thus should receive substantially similar punishment. Defendant Vanderwoude communicated with Weber-Morgan Strike Force agents and arranged the controlled purchase of meth.

---

[2] Defendant's Sentencing Memorandum at pg. 4.
[3] See Utah State case #201902553 and #201901925.

Defendant Steele was Defendant Vanderwoude's source of supply, and accompanied Defendant Vanderwoude to the controlled purchase. So while both co-defendants performed different functions, they were united in a common cause, and could not have operated without the other. Consequently, Defendants Steele and Vanderwoude are tied in lock-step, and a "just punishment" necessarily entails that their sentences be substantially similar.

The Government certainly recognizes that there are differences between Defendants Steele and Vanderwoude. Defendant Steele's criminal history, while dating back further than Defendant Vanderwoude's, is more sporadic. At the time of the offense, Defendant Vanderwoude had just been released from jail for distribution of meth, which is unquestionably an aggravating factor.

By contrast, it had been approximately seven years since Defendant Steele's last conviction involving the distribution of narcotics.[4] However, by Defendant's own admission, she had been deeply involved in trafficking meth for approximately one year. And the Government is less than convinced that she should be credited because Defendant Vanderwoude got caught but she did not. Moreover, this is Defendant Steele's third conviction involving distribution of narcotics. So while Defendant Vanderwoude's federal conviction came in closer proximity to his state conviction, Defendant Steele's year-long drug trafficking and third strike for similar conduct is also an aggravating factor.

The Government similarly recognizes that Defendant Steele has performed well while on pretrial release. Favorable performance while on pretrial release certainly suggests future success while on probation. But success while on pretrial release cannot be the exclusive metric by which she is judged, nor can it completely absolve Defendant Steele of the necessity of §3553's mandate of a "just punishment." And parity in the sentences of co-defendants goes to the very heart of §3553's "just punishment" requirement. That is not to say that §3553 requires identical sentences. The Government certainly recognizes that this Court may determine that certain factors weigh more heavily that others, thus resulting in different sentences. However, lopsided and disproportionate sentences for similarly situated co-defendants cannot be harmonized with the spirit of §3553.

---

[4] Dana Steele Presentence Report, ¶46.

Defendant's requested downward departure from a guideline range of 97-121 is a colossal leap. Her request becomes even more unrealistic when considering the fact her co-defendant received 75 months. Additionally, Defendant Vanderwoude was quick to accept responsibility and plead guilty relatively quickly. By contrast, Defendant Steele dragged her feet, requested numerous continuances, and only accepted responsibility on the eve of trial. While this posture created a protracted and favorable pretrial track record, it seems backwards that the defendant who quickly accepted responsibility would receive a disproportionately longer sentence than his co-defendant who unnecessarily prolonged her case, and now seeks to use that delay as the primary basis for mitigation. Simply put, given all of these factors, Defendant Steele's request of no prison would result in an unfair, unjust, and inequitable miscarriage of justice.

### B. Afford Adequate Deterrence to Criminal Conduct

Society both expects and demands drug dealers receive significant sentences. The serious problems caused by drug dealers is ubiquitously known throughout society. And thus it is no surprise society wants these offenders punished so that it has a deterrent effect. Defendant asserts that her three years on pretrial release demonstrates complete reformation and an unlikeliness to reoffend. Unfortunately, history paints a different picture. This conviction represents Defendant Steele's third conviction for conduct related to distribution of narcotics. While these convictions span over 25 years, this Court must question why Defendant has failed to learn from her prior convictions and why the punishment in those prior convictions failed to serve as an adequate deterrent for her repeated conduct. This Court's sentence needs to deliver the unequivocal message that this conduct is serious, and thus receives serious punishment.

### C. Protect the Public from Further Crimes of the Defendant

Imposing a serious punishment similarly sends the message to the public and community that society will not tolerate criminal conduct. While Defendant Steele's case does not appear to have received media attention, there are certainly many people within her circle that are following the outcome of this case. These individuals will likely talk to others about the case. Personally knowing or being acquainted with individuals elevates the reality of the consequences of the sentence. Indeed, it is

one thing to quickly scan a news article about an unknown individual; it is quite another to know the individual, making outcomes more meaningful. As such, Defendant Steele's sentence must send the appropriate message to the public.

### D. Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional treatment

Defendant's needs do not appear to significantly implicate this factor. While Defendant has provided some medical documentation indicating on-going medical treatment, Defendant's medical condition is not particularly novel nor unique, and thus the Bureau of Prisons should be able to properly address her medical needs.

## CONCLUSION

Defendant's requested sentence of straight probation simply cannot be reconciled with the facts of this case, the outcome of co-Defendant Vanderwoude's 75-month sentence, the suggested guidelines, and §3553's factors. Of particular significance, because Defendant is tied in lock-step to Defendant Vanderwoude, her sentence must bear some resemblance to his. The Government has tried to be realistic and give credit where it is due, and balance the aforementioned factors. Given the totality of these factors, the Government recommends a sentence between 48-60 months.

DATED August 5, 2024.

TRINA A. HIGGINS
UNITED STATES ATTORNEY

/s/ *Nathan D. Lyon*
NATHAN D. LYON
Special Assistant United States Attorney